UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS ROBINETT and LISA ROBINETT,<br><br>  Plaintiffs,<br><br>  v.<br><br>LOANCARE, LLC, AMERICAN FINANCIAL RESOURCES, INC., and LAKEVIEW LOAN SERVICING, LLC,<br><br>  Defendants. | Case No. 3:17-cv-00424-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. OVERVIEW

This matter comes before the Court on Defendants' Second Motion to Dismiss. Dkt. 21. On January 3, 2018, this Court issued a Memorandum Decision and Order dismissing some of Plaintiffs' original claims with prejudice, dismissing the remaining claims without prejudice, and granting Plaintiffs leave to amend their Complaint. Dkt. 19. Plaintiffs filed an Amended Complaint (Dkt. 20) and Defendants again moved to dismiss it in its entirety, with prejudice. Having reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the Motion on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss.

# II. FACTS

On January 1, 2012, Plaintiffs Douglas Robinett and Lisa Robinett granted a Deed of Trust in their home in Kamiah, Idaho, (hereinafter "the Property") to Defendant American Financial Resources, Inc. ("AFR").[1] At all relevant times, Defendant LoanCare serviced the indebtedness secured by the Deed of Trust. Under the Deed of Trust, Plaintiffs were obligated to maintain property insurance on the Property and to name the lender as an additional insured. Specifically, the contract provided as follows:

> **4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.
>
> In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. *All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property.* Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

---

[1] A deed of trust typically involves three parties: a borrower, a trustee, and a lender. For the Deed of Trust at issue in this case, Plaintiffs were the borrowers, Inland Title and Escrow was the trustee, and AFR, initially, was the lender. Dkt. 11-2, at 1.

MEMORANDUM DECISION AND ORDER –2

> In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

Dkt. 11-2, at 3 (emphasis added). Plaintiffs obtained insurance that satisfied this obligation through Foremost Insurance Group.

On August 15, 2015, improvements on the Property were destroyed during the Clearwater Complex and Lawyer Complex forest fires. Plaintiffs allege that, due to the "catastrophic nature of the fire, the premises were a total loss."

After the complete loss of their home, Plaintiffs made claims to their insurer. On August, 28, 2015, Foremost Insurance Group issued checks in the amount of $97,650 and $30,000, payable to Plaintiffs and LoanCare (as an agent/loan servicer for AFR). Plaintiffs endorsed the checks and forwarded them to LoanCare. LoanCare received the checks on or about September 30, 2015.

On September 10, 2015, Plaintiffs made a written demand to LoanCare for a "pay-off amount." Plaintiffs were seeking to refinance their existing debt through Kamiah Community Credit Union in order to facilitate the rebuilding of their destroyed home. LoanCare received the written demand on or around September 14, 2015.

Between September 2015 and May 2016, LoanCare (acting first as an agent for AFR and then as an agent for Lakeview)[2] failed to apply the insurance proceeds to Plaintiffs' debt or to the restoration or make arrangements of any kind to use the

---

[2] On November 30, 2015, AFR transferred its interest in the Deed of Trust to Defendant Lakeview Loan Servicing, L.L.C. ("Lakeview"). However, LoanCare continued to service the loan.

insurance proceeds to restore or repair the premises. LoanCare also failed to provide the requested pay-off information to Plaintiffs or to the Kamiah Community Credit Union, and instead assessed interest and late fees against Plaintiffs.

On November 6, 2015, the Kamiah Community Credit Union rejected Plaintiffs' application for refinancing due to the absence of payoff information that reflected the application of the insurance proceeds to Plaintiffs' then existing indebtedness. Plaintiffs then reapplied for financing from Kamiah Community Credit Union in April of 2016. On April 18 and 26, 2016, Kamiah Community Credit Union made requests to LoanCare seeking Plaintiffs' pay-off information. Each time, LoanCare responded by providing a written pay-off statement that did not reflect the application of the insurance proceeds to the debt.

On or around May 11, 2016, Mortgage Electronic Registration Systems, Inc., acting as an agent for Lakeview, recorded a Notice of Default regarding the subject real property in the county land records in Idaho County, Idaho. Shortly thereafter, on or about May 20, 2016, LoanCare provided a pay-off statement showing application of the insurance proceeds to Plaintiffs' debt. In June of 2016, after LoanCare applied the insurance proceeds to Plaintiffs' debt, Lakeview's interest in the Property, secured by the Deed of Trust, was released. There was some delay in releasing the interest in the Property—which allowed Plaintiffs to obtain new financing to rebuild their home—due to the Notice of Default filed in Idaho County in May of 2016.

On September 5, 2017, Plaintiffs filed suit in Idaho County against LoanCare, Lakeview, and AFR. On October 12, 2017, Defendants removed this action to federal

court on the basis of diversity jurisdiction. Plaintiffs originally asserted five claims against Defendants: (1) breach of contract; (2) conversion; (3) negligence and breach of fiduciary duty; (4) bad faith; and (5) slander of title. In its prior decision, the Court dismissed Counts Three and Four with prejudice. The Court dismissed Counts One, Two, and Five without prejudice and gave Plaintiffs leave to re-allege these claims.

Plaintiffs filed their Amended Complaint on January 23, 2018. Dkt. 20. In it, they only assert two causes of action: (1) breach of contract and (2) conversion. *Id.* Defendants moved to dismiss both of these claims on February 6, 2018. Dkt. 21. The Court scheduled oral argument on the Motion for March 20, 2018, at the Coeur d'Alene Courthouse. Plaintiffs' counsel indicated she would be unable to attend on that date. The Court then communicated to the parties that they could stipulate to a different hearing date, stipulate to have the Court decide the Motion without oral argument, or Plaintiffs' counsel could have another attorney from her firm appear at the scheduled hearing. The Court did not hear back from the parties in a timely fashion. Accordingly, after reviewing the record and briefs, the Court decided to terminate the hearing and decide the Motion without oral argument.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). A complaint that fails to meet this Rule 8(a) standard is subject to attack by a Rule 12(b)(6) motion to

dismiss for failure to state a claim upon which the Court can grant relief. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions." *Id.* at 555. Further, "a formulaic recitation of the elements of a cause of action will not do." *Id.* In considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 112s (9th Cir. 2008). However, the Court need not accept all asserted legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

### A. Breach of Contract Claim

In Count One, Plaintiffs allege that Defendants breached the terms of the Deed of Trust and the covenant of good faith and fair dealing implied therein. In Idaho, "[t]he elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 297 P.3d 232, 241 (Idaho 2013). The parties agree that a contract—the Deed of Trust—exists. The parties also agree that the Deed of Trust provides for two alternatives in the event insurance proceeds are received after the Property has suffered a loss: Defendants may either apply the insurance proceeds "(a) to reduction of the indebtedness under the Note and this Security

instrument, . . . or (b) to the restoration or repair of the damaged Property." Dkt. 11-2, at 3. Finally, the parties agree that eventually, in June of 2016, LoanCare applied the insurance proceeds to Plaintiffs' debt. However, Plaintiffs maintain that Defendants breached the Deed of Trust by failing to apply the insurance proceeds either to the indebtedness or to the restoration or repair of the Property for six months.

In response, Defendants argue that the Deed of Trust provides no timeline for when it must apply the insurance proceeds to one of the two options. Because the contract contains no time requirement, Defendants argue, they did not breach the contract by waiting six months to act. Defendants further argue that a finding that the delay in applying the proceeds to the insurance proceeds constitutes a breach of contract would require the Court to act contrary to Idaho law by imposing new terms that neither party had agreed to nor had been included in the Deed of Trust. Dkt. 21-1, at 7 (citing *Kantor v. Kantor*, 379 P.3d 1080, 1093 (Idaho 2016) ("Courts do not have the power to rewrite contracts")).

The Court disagrees with Defendants' arguments on this issue. Under Idaho law, "when parties to a contract have not agreed to a term essential to determine their rights and duties, the court supplies a term reasonable in the circumstances." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1240 (Idaho 2010) (citing Restatement (Second) of Contracts § 204 (1981)). "Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance." *Id.* (quoting *Hull v. Giesler*, 331 P.3d 507,

MEMORANDUM DECISION AND ORDER –7

520 (Idaho 2014)); *see also In re Davis*, 554 B.R. 918, 924 (Bankr. D. Idaho 2016) (explaining that Idaho "follows the minority rule" in applying a "reasonable time" term in contracts where the parties have failed to provide a timeframe to complete performance).

Defendants argue that under *Kantor* this Court cannot impose a reasonable time term to the contractual obligation to apply the insurance proceeds to one of the two available options. *See* 379 P.3d at 1093. At issue in *Kantor* was a contract between a divorced husband and wife in which the husband agreed to pay the wife's credit card debts. *Id.* at 1092–93. The district court found the husband had not violated the contract by making minimum payments on the credit card debts and refused to require the husband "to pay off the credit card debt within a specified time." *Id.* at 1093. The Idaho Supreme Court upheld these rulings because a timeframe for payoff of the debt was not "'a term essential to determine the rights and duties' of the parties" and it was not the district court's duty to provide the wife "with a better contract than the one she bargained for. *Id.*

In contrast, the Idaho Supreme Court has many times found a district court's imposition of a "reasonable time" term in a contract was proper. For example, in 2014, in *Hull v. Giesler*,[3] the Supreme Court found a district did not err in imposing a "reasonable time" term in a contract to develop a subdivision where the contract did not provide a timeframe for the developer to complete the subdivision. 331 P.3d at 520. ("[T]he district

---

[3] Cited by the Idaho Supreme Court in *Kantor* as follows: "When parties to a contract have not agreed to a term essential to determine their rights and duties, the court supplies a term reasonable in the circumstances." 379 P.3d at 1090.

court could supply a reasonable time for performance to the contract as long as there is evidence in the record about when the parties intended the contract to be completed."). In its 2010 decision in *Weinstein v. Prudential Property and Casualty Insurance Company*, the Idaho Supreme Court affirmed a district court's finding that a car insurance company "breached the terms of [a car insurance] policy by failing to make payments under the [uninsured motorist] coverage within a reasonable time." 233 P.3d at 1240. The policy contained no provision stating when the benefits were to be paid, so the district court applied a reasonable time term. *Id.* In *VanderWal v. Albar, Inc.*, the Idaho Supreme Court endorsed a district court's imposition of a reasonable time term to a contract requiring the defendant to clean up a gasoline spill on the defendant's property and the surrounding properties. 303 P.3d 175, 181 (Idaho 2013) ("The well-established law in Idaho is, 'Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance.' Albar does not acknowledge that well-established law, nor does it cite any authority supporting its assertion that if the contract does not specify a time for performance then there is no time limit, *undoubtedly because no such authority exists*." (internal citation omitted) (emphasis added)); *see also Erickson v. ING Life Ins. & Annuity, Co.*, No. CV09-204-S-EJL, 2011 WL 4583844, at *6 (D. Idaho Sept. 6, 2011), *report and recommendation adopted*, No. CV09-204-S-EJL, 2011 WL 6056902 (D. Idaho Dec. 6, 2011) ("[W]hile the formal written instructions did not include a specific time frame to direct the wire transfer, there is evidence in the record that both parties understood and

intended that the transfer should be performed in a time and manner that would allow Prudential to receive and reinvest them before the close of that business day.").

Thus, the majority of Idaho Supreme Court precedent instructs that the time for performance generally is a term essential to determine the rights and duties of the parties. The one case supporting a contrary position, *Kantor*, is distinguishable. In that case alone, an additional contract—the credit card contracts—would have imposed a duty for the husband to perform within a certain timeframe—the husband had to make minimum payments and, by making those payments, he would eventually pay off the debt. This case is closer to the other above cited Idaho Supreme Court cases, *Weistein* in particular. Without imposing a reasonable timeframe for payment of the insurance proceeds, Defendants could postpone payment indefinitely. The Court, therefore, finds the time for performance is a term essential to determine the rights and duties of the parties in this case. Because the parties to the Deed of Trust did not explicitly agree to a timeframe within which Defendants were to apply the insurance proceeds either to Plaintiffs' debt or to repairs to the Property, a "reasonable time" term must be implied in the contract. What constitutes "reasonable time" for performance is a fact issue that must be decided at a later date. For now, Plaintiffs' allegation that Defendants violated this reasonable time term is sufficient to state a claim for breach of contract upon which relief can be granted. Therefore, the Court denies the Motion to Dismiss the breach of contract claim.

B. *Breach of the Implied Covenant of Good Faith and Fair Dealing Claim*

The Court now turns to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. "Idaho law recognizes a cause of action for breach of an

implied covenant of good faith and fair dealing." *Cantwell v. City of Boise*, 191 P.3d 205, 213 (Idaho 2008) (citation omitted). The covenant of good faith and fair dealing does not override the express terms of the contract. *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 698 (Idaho 2009). Rather, the covenant only requires "that the parties perform in good faith the obligations imposed by their agreement." *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 864 (Idaho 1991). However, "[t]he covenant of good faith and fair dealing is only violated when 'action by either party . . . violates, nullifies or significantly impairs any benefit of the . . . contract.'" *Id.* (citation omitted).

Defendants argue first that because the Deed of Trust does not contain a timeframe for applying the insurance proceeds to either Plaintiffs' debt or improvements to the Property, the covenant of good faith and fair dealing cannot impose a timeframe on this performance. As explained in the previous section, a reasonable timeframe for performance is implied in the contract, so this argument is not applicable.

Second, Defendants argue that this claim must be dismissed because their delay in applying the insurance proceeds to either of the two available options did not violate, nullify, of impair any benefit of the contract. Defendants point out that Plaintiffs only wanted the insurance funds applied to their debt quickly so they could refinance their debt and obtain additional funds to rebuild their home. Such a benefit, Defendants argue, was not an intended benefit of the Deed of Trust generally or the specific provision at issue here. Rather, Defendants assert that the sole purpose of the contract's insurance provision was to ensure that Defendants' interests were protected in the event of a catastrophic loss.

MEMORANDUM DECISION AND ORDER –11

Plaintiffs argue in response that the "primary benefit under the Deed of Trust as a whole is that they were able to obtain financing to purchase a home." Dkt. 22, at 6. Moreover, Plaintiffs assert that a "reasonable reading" of the insurance provision "supports the natural conclusion that" Defendants "would not unreasonably delay the application of insurance proceeds to secured indebtedness or the rebuilding of their home." *Id.* As explained below, the Court disagrees.

*Metcalf v. Intermountain Gas Company*, 778 P.2d 744 (Idaho 1989), the first Idaho Supreme Court case to recognize this cause of action, involved a dispute over an at-will employment contract. Drawing on a case out of Arizona, the high court found "the covenant [of good faith and fair dealing] d[id] not protect the employee from a 'no cause' termination because tenure was never a benefit inherent in the at-will agreement." *Id.* at 749 (quoting *Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1040–41 (Ariz. 1985)). However, as the Arizona Court noted, the covenant would have protected the employee "from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee, such as [] sales commissions." *Id.* (quoting *Wagenseller*, 710 P.2d at 1040–41); *see also Paolini v. Albertson's Inc., Plan Administrator*, 482 F.3d 1149, 1153 (9th Cir. 2007) ("Continued employment, of course, does not itself constitute a benefit inherent in an express or implied-at-will agreement.").

Like continued employment is not an inherent benefit in at-will employment contracts, Plaintiffs' ability to obtain new financing after a catastrophic loss is not an inherent benefit in the Deed of Trust. The Deed of Trust does not mention this benefit anywhere and a reasonable reading of the contract does not indicate that the parties

MEMORANDUM DECISION AND ORDER –12

contemplated such a benefit at the time of contracting. Moreover, Defendants delay in applying the insurance proceeds did not impair the primary purpose of the contract as a whole—the facilitation of Plaintiffs' *original* purchase of the Property. Rather, a reasonable reading of the specific insurance distribution clause indicates it was only intended to benefit and protect the Lender. Indeed, the option of applying the proceeds to either the Plaintiffs' debt or repairs on the Property seems fashioned to permit the Lender to decide which of the two option would best protect its interest in the Property.[4]

Because Plaintiffs have not alleged that Defendants' delay violated, nullified, or significantly impaired any benefit of the Deed of Trust, the Court must dismiss Plaintiffs breach of contract claim to the extent it alleges a breach of the implied covenant of good faith and fair dealing.

### B. Conversion

In Count Two, Plaintiffs assert a claim of conversion. "Generally, conversion is defined as a distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with [his] rights therein." *Carpenter v. Turrell*, 227 P.3d 575, 580 (Idaho 2010) (quoting *Peasley Transfer & Storage Co. v. Smith*, 979 P.2d 605, 616 (Idaho 1999)). "In other words, conversion is a dealing by a person with chattels not belonging to him, in a manner inconsistent with the rights of the owner." *Carver v.*

---

[4] The Court also notes that Plaintiffs have not cited, and the Court has not found, an Idaho case holding that a delay in performing a contract may amount to a breach of the implied covenant of good faith and fair dealing implicit in every contract. Some other jurisdictions have explicitly recognized such a claim. *See Conte v. Bank of Am., N.A.*, 52 F. Supp. 3d 265, 270 (D. Mass. 2014); *Garrett v. Music Pub. Co. of Am., LLC*, 740 F. Supp. 2d 457, 463 (S.D.N.Y. 2010).

*Ketchum*, 26 P.2d 139, 141 (Idaho 1933). Under Idaho law, a claim for conversion has three elements: "(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010). Plaintiffs generally assert that Defendants exercised unlawful dominion over the insurance proceeds by failing to distribute the insurance proceeds in a timely fashion. Only the first two elements of this claim are at issue, because, as to the third element, the Idaho Supreme Court has held that a check or "specifically identifiable monies" may be personal property that is properly the subject of a conversion claim. *Med. Recovery Servs., LLC v. Bonneville Billing & Collections, Inc.*, 336 P.3d 802, 807 (Idaho 2014) (citations omitted).

Defendants argue that Plaintiffs have failed to plead the first element because nothing in the Amended Complaint alleges that they wrongfully asserted dominion over the insurance proceeds and Plaintiffs have failed to allege they made a proper demand for return of the insurance proceeds.

As explained previously, *Luzar v. Western Surety Co.*, 692 P.2d 337 (Idaho 1984), outlines the legal requirements in Idaho for asserting a claim for conversion based on the refusal to return the collateral of a security agreement. *See* Dkt. 19. In *Luzar*, the plaintiff trucking company gave a certificate of deposit as collateral for a bond. 692 P.2d at 339. The plaintiff then obtained a substitute bond that did not require collateral and requested return of the certificate of deposit. *Id.* The plaintiff made a written demand for the return of the collateral. *Id.* When the surety company did not return the certificate, the plaintiff

filed a claim for conversion. *Id.* The court explained, "[a] cause of action for conversion is a remedy available to a pledgor against a secured party-pledgee who refuses to return the collateral if a security agreement does not give a legal right to retain the collateral after a demand for return by the pledgor." *Id.* at 340. "If at the time the pledgor makes the demand for the return of the collateral, the secured party has a contractual right to continue to retain the collateral, then its refusal to return the collateral would not be an 'act of dominion wrongfully asserted.'" *Id.* "If, however, the pledgor makes a rightful and reasonable demand for return of the collateral, the pledgee must act reasonably in either returning the collateral or in refusing to do so." *Id.* The facts of *Luzar* are analogous enough to the dispute at issue to inform this case.

Defendants initially had the right to exercise dominion over the insurance proceeds as the checks were made out both to Plaintiffs and LoanCare—and Plaintiffs voluntarily forwarded the checks to LoanCare—as required by the Deed of Trust. Plaintiffs argue that Defendants wrongfully retained the insurance proceeds after they made the required demands on LoanCare regarding the proceeds. Plaintiffs specifically allege that they "made a written demand for a pay-off amount as part of an effort to refinance the existing indebtedness and facilitate the rebuilding of their destroyed home. Defendant Loancare, L.L.C. received said correspondence on or around September 14, 2015." Dkt. 20, at 4. Plaintiffs allege that thereafter LoanCare failed to apply the insurance proceeds to either their debt or repairs on the Property. This statement, in and of itself, gives no details as to what exactly the "written demand" contained. However, later Plaintiffs allege this:

MEMORANDUM DECISION AND ORDER –15

> Where all parties understood or upon exercise of due diligence should have understood that the subject insurance proceeds were insufficient to cover the cost of the repair and restoration of the subject premises, such that restoration or repair of the subject premises without additional funds was not reasonably feasible, Plaintiffs' demands as to application of the insurance proceeds constituted a rightful and reasonable demand as to said funds . . . .

*Id.* at 8–9. In this statement, Plaintiffs appear to allege that they only demanded that Defendants apply the insurance proceeds to their debt and that they did not need to alternatively demand that Defendants apply the insurance proceeds to repairs because repairing the property with the available funds was not feasible.

Plaintiffs cite no authority to support their contention that they only needed to demand that Defendants apply the proceeds to their debt because complete repair of the Property was not feasible. The Deed of Trust itself does not require that complete repair of the premises with the available funds be feasible before Defendants could opt to apply the insurance proceeds to repairs instead of the Plaintiffs' debt. Thus, it appears that Plaintiffs' Amended Complaint again does not allege that they made the required "rightful and reasonable demand" that Defendants comply with the Deed of Trust and distribute the insurance proceeds to either their debt or the repairs to the Property. Defendants were not required to apply the funds to Plaintiffs' debt as they appeared to demand. But, in the end, the language of the Amended Complaint is not clear and is thus insufficient to meet the notice pleading requirements. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). These factual allegations about Plaintiffs' demand are not "well-pleaded," *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and not sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it

rests," *Lee*, 250 F.3d at 679. Accordingly, Plaintiffs have not sufficiently alleged a claim for conversion.

## V. ORDER

THE COURT HEREBY ORDERS:

1. Defendants Second Motion to Dismiss (Dkt. 21) is GRANTED IN PART and DENIED IN PART as follows:

    a. The Motion is DENIED as to the breach of contract claim;

    b. The Motion is GRANTED as to the breach of the covenant of good faith and fair dealing claim and the conversion claim;

    c. The claims for breach of the covenant of good faith and fair dealing and conversion are DISMISSED WITH PREJUDICE.

DATED: April 25, 2018

_____
David C. Nye
U.S. District Court Judge